# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

LOIS PALMER, ET AL                           CIVIL ACTION NO. 09-mc-0019

VERSUS

MARSHALL HAWKINS                             MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Dr. Barbara Lynn Palmer, M.D., died, and some of her relatives suspected that her husband, Marshall Hawkins, D.D.S., had poisoned her. Three of the relatives filed a wrongful death suit against Hawkins in the Southern District of Mississippi.

At the time of his wife's death, Hawkins was employed by the Veterans Affairs Medical Center in Shreveport, Louisiana. The plaintiffs in the Mississippi case issued a notice of deposition and subpoena for Dr. Carroll Atkins, of the Shreveport VA Dental Clinic, for a deposition to be held in Jackson, Mississippi on January 12, 2009. The subpoena directed Dr. Atkins to produce at the deposition: "A copy of your personnel file on Marshall Hawkins including Mr. Hawkins' leave slip for July 9-10, 2007."[1]

An attorney with the Office of Regional Counsel for the Department of Veterans Affairs wrote one of the plaintiff's attorneys to advise that Dr. Atkins would not attend the

---

[1] There is no copy in the record of the subpoena for the January 12 deposition in Jackson. The court is assuming, based on references to the subpoena in letters and briefs, that the request for documents was the same or similar to the language quoted, which is from a later subpoena that attempted to set the deposition for May 21, 2009 at the Hilton Hotel in Shreveport. See Exhibit to Doc. 4.

January 12 deposition in Jackson.  The letter explained that the federal agency first requires a written request in accordance with regulations set forth at 38 C.F.R. § 14.800, *et seq*.  The agency will review such requests and determine, based on factors set forth in the regulations, whether the VA employee may be deposed or otherwise participate in legal proceedings. Counsel added: "However, based upon the information currently available, I do not believe that our office will permit Dr. Atkins to be deposed in this matter." The regulations cited by the agency are similar to those enacted by several government agencies.  They are often referred to as <u>Touhy</u> regulations, referencing the decision in <u>U.S. ex rel. Touhy v. Ragen</u>, 71 S.Ct. 416 (1951).

Counsel for the plaintiffs responded by making a formal <u>Touhy</u> request for the subpoenaed documents and the testimony of Dr. Atkins.  Counsel wrote that the plaintiffs have retained a pathologist who has opined that Dr. Palmer was poisoned, and counsel represented that there is "much compelling circumstantial evidence implicating Dr. Hawkins."  He explained that the plaintiffs subpoenaed Hawkins' personnel file to determine whether it contains evidence of Hawkins' motivation to poison Dr. Palmer with the goal of obtaining life insurance proceeds.  Counsel said that he understood that Dr. Hawkins had financial difficulties and that he was not retained by the VA shortly after Dr. Palmer's death.  Counsel said he wished to review the personnel file to see if Hawkins had received poor job evaluations or if there were other documents showing that Hawkins knew he could not rely on continued employment at the VA.

Counsel added that he wished to review Hawkins' time, attendance, and leave records for July 9-10, 2007 because Dr. Palmer first became ill on Tuesday, July 9 (that date was actually a Monday). Hawkins was home at that time. Counsel wished to learn from the leave records whether it was unusual for Hawkins to be at home rather than at work on a Monday and a Tuesday. Counsel added that Dr. Palmer had visited an attorney on Friday, July 5 (July 5, 2007 was actually a Thursday) to discuss a divorce from Hawkins. Counsel said he understood that Dr. Palmer was going to tell Hawkins about the divorce over the weekend. This triggered counsel's desire to also review Hawkins' leave slips to see if Hawkins had applied for leave before he left work on Friday or if he had called in his request for leave over the weekend or on Monday. Counsel added:

> The records may be produced without any witness testimony. After my review of the documents, if I need testimony, we can schedule the testimony. Please consider this request to be for deposition testimony and for trial testimony should I need to introduce any of the records at trial.

The VA Office of Regional Counsel denied the request in a one-page letter. Counsel noted that the United States had no interest in the tort litigation and that it was the policy of the United States to avoid becoming embroiled in litigation in which it does not have an interest. Reasons cited include the conservation and efficient use of resources and avoiding the appearance of taking sides in civil litigation. Finally, counsel wrote that "the employment records you seek could easily be obtained by the Defendant in this matter, as they are his records, and produced through routine discovery."

The plaintiffs filed a motion to compel in the Southern District of Mississippi. The United States reportedly moved to quash the subpoena, for reasons including that the subpoena was served outside the range of Rule 45's 100-mile bulge provision. The plaintiffs state that the motion to quash "is well taken." The government reports that the plaintiffs voluntarily withdrew the motion to compel.

The plaintiffs' next step was to issue a subpoena from this court for a deposition of Dr. Atkins to be held here in Shreveport, Louisiana on May 21, 2009. The plaintiffs concede, however, that the subpoena is unenforceable without the grant of a <u>Touhy</u> request by the VA, so they filed with this court a Motion to Compel (Doc. 1) to challenge the agency's denial of their earlier request. The United States responded, and the parties have now fully briefed the issues. The parties have not quibbled over the fact that the Shreveport subpoena was not the actual subject of the <u>Touhy</u> request that the agency addressed. The plaintiffs did argue in their reply memorandum that the "subpoena at issue" sets the deposition in the less burdensome location of Shreveport, but a review of the plaintiffs' <u>Touhy</u> request and related correspondence makes clear that the request presented to the VA related to a January 12, 2009 deposition in Jackson, Mississippi, which is more than 200 miles from Dr. Atkins' Shreveport office.

The first issue is this court's standard of review of the VA's final agency decision. The plaintiffs argue that Fed. R. Civ. Proc. 45, which generally governs subpoenas in federal civil actions, controls this contest. It permits the court to quash or modify a subpoena if it

subjects a person to an undue burden. If this standard applies, the United States would have to show that the subpoena subjects it to an undue burden.

The United States argues that its sovereign immunity subjects the VA's decision to the more limited review permitted by the Administrative Procedures Act ("APA"). The standard of review under the APA permits the court to set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). This review focuses on the reasonableness of the agency's decision-making process. It is "narrow and deferential, requiring only that the agency articulate a rational relationship between the facts found and the choice made." Alenco Communications, Inc. v. FCC, 201 F.3d 608, 619-20 (5th Cir. 2000) (internal quotations omitted).

There is a split of authority whether the APA's arbitrary and capricious standard or Rule 45's undue burden standard should control a motion to compel discovery from a federal agency that is not a party to the civil action. See In re Vioxx Products Liability Litigation, 235 F.R.D. 334 (E.D. La. 2006) (collecting cases on both sides of the split but avoiding the issue). The Rule 45 side of the split is anchored by Exxon Shipping Co. v. U.S. Department of Interior, 34 F.3d 774, 780 (9th Cir. 1994). The APA argument finds support in cases such as Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1197 (11th Cir. 1991); Comsat Corporation v. National Science Foundation, 190 F.3d 269, 274 (4th Cir. 1999); and U.S. EPA v. General Electric Co., 197 F.3d 592, 598 (2d Cir. 1999).

The parties argue that the Fifth Circuit has chosen sides in the split, but they do not agree on which side it has chosen. The court is not persuaded that the Fifth Circuit has made any clear choice on the issue, but it is persuaded that the courts that have applied the APA standard have the better argument. As the Second Circuit stated: "We disagree with the Ninth Circuit's approach and think that the only identifiable waiver of sovereign immunity that would permit a court to require a response to a subpoena in an action in which the Government is not a party is found in the APA." <u>U.S. EPA v. General Electric</u>, 197 F.3d at 598. This court will follow the APA approach.

The plaintiffs argue that the arbitrariness of the Government's position is demonstrated by the time it has spent litigating this issue when Dr. Atkins' deposition would have taken no more than 30 to 60 minutes. However, when the plaintiffs pressed the VA for a decision, the subpoena at issue required Dr. Atkins to travel to Jackson, Mississippi. The <u>Touhy</u> request was somewhat vague but suggested that Dr. Atkins might also be called as a witness at trial, to be held in the Southern District of Mississippi. Those obligations would obviously require more time away from work than the plaintiffs suggest.

The VA did not expressly rely upon the Privacy Act when it refused to disclose the employment records, but the parties have discussed the Act in their briefs. The Government says that it was "fairly obvious" that the VA relied on the absence of a Privacy Act waiver from Hawkins when it directed the plaintiffs to the Office of Personnel Management and the regulations regarding the release of employee records. The VA later told the plaintiffs that

the records could be obtained from Dr. Hawkins by routine discovery requests. Plaintiffs argue that the Privacy Act does not give the Government a discovery privilege, that it has no indication that Dr. Hawkins possesses the personnel records, and that they do not believe the rules of discovery can be used to compel Hawkins to request the records from the VA or OPM.

Parties engaged in discovery routinely request that a party execute a waiver, request, or other document that will allow the release of medical, personnel, banking, and other protected records that are relevant to the litigation. The plaintiffs could attempt to use such a procedure to have Dr. Hawkins sign a proper waiver or request that the OPM produce the documents. Dr. Hawkins may not have the personnel records in his home, but he does have them within his "possession, custody, or control" within the meaning of Fed. R. Civ. Proc. 34 if the government is correct that Hawkins may obtain his records by a simple request.

The plaintiffs disagree with the VA's decision to not provide personnel records of its employee, but the plaintiffs have not pursued the reasonable, alternative means of acquiring the documents that was suggested by the VA. The plaintiffs object to the VA's decision to not have one of its managers testify at a deposition, but the deposition would take the manager away from his duties and require that he participate in a tort case in which the government has no interest. There was a rational, albeit arguable, basis for the VA's decision in this case. The plaintiffs have not demonstrated that the agency decision was arbitrary and capricious. The **Motion to Compel (Doc. 1)** is **denied**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 2nd day of October, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE